IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ANDREA, M.[1], <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. 6:18-cv-01155-SI <br><br> **OPINION AND ORDER** |

Robyn M. Rebers, ROBYN M. REBERS, LLC, P.O. Box 3530, Wilsonville, OR, 97070. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Ryan Lu, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Andrea M. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for Disability Insurance Benefits ("DIB") with a protective filing date of June 6, 2014. Plaintiff alleges disability beginning on December 10, 2008. Plaintiff was born on May 2, 1966 and was 47 years old at the alleged onset of disability date. AR 43. Plaintiff alleged disability due to degenerative disc disease, vertigo, IBS with constipation, loin pain hematuria syndrome, medullary necrosis, chromic pyelonephritis with lesion of renal, ADHD, tendinosis, and hiatus hernia. AR 185. Her claim for DIB was denied initially and upon reconsideration. AR 96, 110. Plaintiff filed a written request for a hearing and a hearing was held before an administrative law judge ("ALJ") on April 17, 2017. AR 38. At the hearing, Plaintiff testified and was represented by an attorney. AR 39-86. On July 27, 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff now seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff last me the insured status requirements on December 31, 2013. Thus, for Plaintiff's DIB claim, she must establish disability on or before that date. The ALJ then conducted the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 17. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, irritable bowel syndrome, and vertiginous syndrome. AR 17. The ALJ found that Plaintiff's diagnosis of interstitial cystitis occurred after the date last insured and that Plaintiff's pain symptoms did not develop until after the date last insured. AR 18. The ALJ found that Plaintiff's medically determinable mental impairments caused no more than mild limitation in any of the functional areas and were therefore non-severe. AR 19. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. AR 19. The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 C.F.R. § 404.1567(b). She could never climb ladders, ropes or scaffolds. She could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch and crawl. She needed a sit/stand option defined as the ability to change position after 30 to 60 minutes for 3 to 5 minutes while remaining on task.

AR 20.

At step four, the ALJ found that Plaintiff was able to perform her past relevant work as an administrative clerk. AR 25. The ALJ also found that there are other jobs in the national economy that Plaintiff is also able to perform, so the ALJ made the alternative finding that Plaintiff could perform the requirements of occupations such as electrical accessories assembler, agricultural sorter, and production line solderer. AR 26. At step five, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 10, 2008, the alleged onset date, through December 31, 2013, the date last insured. AR 27.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to call a medical advisor at Plaintiff's hearing, (2) improperly evaluating Dr. Hay's opinion, (3) improperly discounting Plaintiff's symptom testimony (4) improperly discounting the statement of Mr. M., Plaintiff's husband, and (5) failing to formulate Plaintiff's RFC based on all of her limitations.

### 1. Failure to Call a Medical Advisor

Plaintiff argues that the ALJ erred by failing to call a medical advisor to testify at Plaintiff's hearing to aid the ALJ in determining the onset date of Plaintiff's interstitial cystitis.

Under SSR 83-20, available at 1983 WL 31249, and Ninth Circuit case law, the ALJ has a responsibility to resolve an ambiguous disability onset date by calling on a medical expert. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (1988). SSR 83-20 reads, in relevant part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process. . . .
>
> This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

1983 WL 31249, at *2-3.

In *Sam v. Astrue*, the Ninth Circuit held that the ALJ had been under no obligation to develop the medical record because the ALJ found that the claimant had not been disabled at any time through the date of decision. 550 F.3d 808, 810 (9th Cir. 2008). The Ninth Circuit noted in *Sam* that the claimant's reliance on *DeLorne v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991), *Amstrong*, 160 F.3d at 587, and *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991) (per curiam), was "misplaced because in those cases there was either an explicit ALJ finding or substantial evidence that the claimant was disabled at some point after the date last insured, thus raising a question of onset date." *Sam*, 550 F.3d at 811. In *Armstrong*, because the claimant's disability had progressed slowly, over a period of years, the exact disability onset date was not clear from the record. 160 F.3d at 590. The Ninth Circuit held that the ALJ should have inferred the onset

date using the guidance of SSR 83-20 and called a medical export to testify as to the disability onset date. *Id.*

The Commissioner argues that SSR 83-20 is inapplicable because ALJ examined the record and was able to determine that Plaintiff's symptoms of interstitial cystitis did not manifest until after the date last insured. Interstitial cystitis is a bladder condition and its symptoms include pain in the pelvic region and urinary urgency and frequency. The ALJ reviewed the medical record and found that Plaintiff did not complain of the symptoms associated with interstitial cystitis until after the date last insured. For example, in July 2012, Plaintiff reported no changes in her bladder and in December 2012, Plaintiff reported no bladder symptoms such as frequent urination. AR 366, 400. In December 2012 and September 2013, Plaintiff reported that she was sleeping well. 398-401, 531. Although Plaintiff had suffered from abdominal pain associated with her irritable bowel syndrome for years, on January 31, 2014, Plaintiff reported lower bowel pain that she thought was unrelated to her irritable bowel syndrome. 526. She followed up about this slightly different kind of abdominal pain in March 2014 and was eventually diagnosed with interstitial cystitis. Plaintiff points to evidence in the record that she suffered from frequent urination and pelvic pain, but all of the medical notes Plaintiff points to are after the date last insured. *See, e.g.*, AR 507, 508, 619, 623, 947 (Plaintiff's reports in March 2014 through September 2015). Substantial evidence supports the ALJ's conclusion that Plaintiff's interstitial cystitis was not a medically determinable condition until her date last insured.

2. **Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to give the opinion of Dr. Alan Hay controlling weight and failed to provide specific and legitimate reasons to support her rejection of his opinion. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among

PAGE 8 – OPINION AND ORDER

physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are

supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*, 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it). An ALJ may also give less weight to opinions that do not meaningfully relate back to the time period at issue. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of

PAGE 10 – OPINION AND ORDER

non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

The ALJ provided specific and legitimate reasons for rejecting Dr. Hay's opinion dated September 25, 2015, nearly two years after Plaintiff's date last insured. AR 745-48. Dr. Hay's opinion was inconsistent with that of the state medical examiners, Dr. Martin Kehrli and Dr. Peter Bernardo. Additionally, the ALJ noted that Dr. Hay did not treat Plaintiff during the relevant time period and he only began treating her in March of 2014. The ALJ also found that Dr. Hay's opinion that Plaintiff's interstitial cystitis dates back to October 2009 is unsupported by the medical record, because, as discussed above, Plaintiff did not report symptoms of interstitial cystitis until after the date last insured. His opinion is inconsistent with the reports of Plaintiff's symptoms throughout the record that Plaintiff made contemporaneously. The ALJ concluded that the estimation of Plaintiff's residual functional capacity on Dr. Hay's opinion form was not consistent with the record as a whole or with Plaintiff's demonstrated functioning during that time period. During the time period which Dr. Hay stated that Plaintiff was disabled, other medical evidence in the record showed that Plaintiff was not reporting radiating leg pain, had normal muscle and gait, was able to gain relief from her lower back pain with physical therapy, and was not complaining of symptoms associated with interstitial cystitis. AR 372, 375, 398, 400. *See, e.g., Tidwell*, 161 F.3d at 602 ("The fact that Dr. Winkler did not examine Appellant until November 12, 1993, more than a year after the expiration of her insured status, coupled with other contradictory medical evidence, fully supports the ALJ's determination that Dr. Winkler's submissions were not convincing.").

The ALJ's conclusion that Plaintiff filled out the form instead of Dr. Hay is, however, unsupported by substantial evidence. The ALJ concluded that the handwriting on Dr. Hay's form

PAGE 11 – OPINION AND ORDER

looked like Plaintiff's handwriting and therefore concluded that Plaintiff had filled out the form and simply had Dr. Hay sign off on it. AR 25. The ALJ is not a handwriting expert, and the ALJ never asked Plaintiff or Dr. Hay whether this theory was correct or provided either of them with an opportunity to explain the form. The Court finds that this error was harmless, however, because the ALJ provided three other legitimate reasons for giving little weight to Dr. Hay's opinion and it appears certain that the ALJ would have given Dr. Hay's opinion little weight even if the form were written in handwriting that did not resemble Plaintiff's handwriting.

### 3. Plaintiff's Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

PAGE 12 – OPINION AND ORDER

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated

instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some degree of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 21. Plaintiff alleged that she had difficulty sitting, standing, she has seen limited improvement in her symptoms from her various treatments and she is limited in her personal care and has vertigo for up to a month at a time. AR 20, 54, 55. First, the ALJ noted that Plaintiff alleged that she had become unable to work due to her disability, but the record demonstrates that Plaintiff's disability was not the reason that she stopped working in 2008. AR 186, 50-51. Plaintiff's termination was unrelated to her disability and was instead due to an incident in which Plaintiff had stolen funds from her employer. AR 21, 51. Further, the ALJ noted that Plaintiff was diagnosed with IBS in 2007, yet she was able to continue working despite her IBS in 2008. AR 22.

The ALJ concluded that Plaintiff's reported symptoms were also inconsistent with the objective medical evidence and Plaintiff's activities of daily living. A lumbar MRI in 2009 showed mild disc bulges, but no neuroforaminal narrowing. AR 325. In 2011, Plaintiff reported to her doctor that she was getting some pain relief from physical therapy and low back exercises and her back pain did not radiate into her legs. AR 325. Plaintiff did not continue with physical therapy, however, and the ALJ found that her minimal participation in physical therapy was inconsistent with her claimed level of pain and limitations. AR 24.

The medical record also does not substantiate Plaintiff's testimony about the severity of her vertigo. In October 2009, Plaintiff reported vertigo, but did not experience any nausea or vomiting. AR 318. After reporting this vertigo to Dr. Linda Cunningham in 2009, however, Plaintiff did not complain of vertigo again for another two years. An audiogram showed mild to moderate hearing loss, and Dr. Cunningham recommended that Plaintiff follow up with an audiologist, but the record does not contain any evidence of a follow up appointment. AR 334-36. The ALJ reasonably concluded that this failure to follow up or seek treatment was inconsistent with Plaintiff's testimony about the severity of her vertigo. AR 24. Finally, although Plaintiff testified that treatment had not helped her symptoms, the ALJ noted that the medical record showed Plaintiff occasionally reported that medication was effective and successfully treating her symptoms. AR 398, 411-412, 419. In March 2013, Plaintiff changed medication for her constipation and reported that she had much better control of her constipation. AR 419. In March 2014, after the date last insured, she reported that she was no longer having constipation problems. AR 419.

During the hearing, Plaintiff testified that she tried to go on a hike in 2012 and she stopped playing golf sometime in 2009 or 2010, despite alleging that she could not walk more than 10 minutes and at times couldn't walk at all. AR 47. This testimony is inconsistent with Plaintiff's description of her physical limitations during this time period, and the ALJ reasonably relied on these contradictions in rejecting in part Plaintiff's testimony about the severity of her symptoms. AR 24. *See Molina*, 674 F.3d at 1113.

The ALJ's interpretation of the medical evidence differs from Plaintiff's interpretation, and reasonable minds could reach different conclusions about Plaintiff's symptoms in light of her testimony and the medical record. *Tommasetti*, 533 F.3d at 1040. The ALJ has provided a

rational interpretation of the medical evidence, including Plaintiff's reports to doctors about her symptoms throughout the years, her testimony at the hearing, and the objective medical evidence in the record. The ALJ did not err in rejecting some of Plaintiff's subjective symptom testimony.

### 4. Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no

reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ considered the statements from Plaintiff's husband, Mr. M. and the ALJ gave his statements some weight. AR 25. The ALJ noted that, although Mr. M.'s statements were generally credible, they were inconsistent with the medical evidence in the record and with Plaintiff's reported level of activity throughout the record. AR 25. The ALJ adequately explained her reasons for giving less weight to Mr. M.'s statements. These are germane reasons for rejecting lay witness testimony, and the ALJ did not err in doing so.

### 5. Plaintiff's RFC

Finally, Plaintiff argues that the ALJ formulated an incorrect RFC because the ALJ failed to include all of Plaintiff's limitations in the RFC. Plaintiff argues that the ALJ failed to include Plaintiff's limitations associated with her interstitial cystitis including frequent urination and the amount of time she would be off task for breaks. The Court has already addressed Plaintiff's March 2014 diagnosis of interstitial cystitis, which was based in part on Plaintiff's January 2014 report of recent pain not associated with her IBS. AR 526. The ALJ examined the record and found that the record evidence did not support Plaintiff's complaints of symptoms of interstitial cystitis prior to 2014 the record evidence does not contain complaints of Plaintiff having urinary frequency before 2014. ECF 398, 400.

The remainder of Plaintiff's claims of error with the RFC consist of assertions that the RFC failed to take into account her subjective symptom testimony. The Court has already found that the ALJ provided adequate reasoning for its conclusion that Plaintiff's medically determinable impairments could be reasonably expected to cause some degree of the alleged symptoms, but that Plaintiff's testimony concerning intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the medical evidence in the record and other

PAGE 18 – OPINION AND ORDER

evidence in the record. AR 21. When there are inconsistencies in the record, it is the ALJ's duty to determine credibility and resolve conflicts in the record. See, e.g. Thomas, 278 F.3d at 956-57. Because the ALJ properly discounted some of Plaintiff's subjective symptom testimony because it was inconsistent with the record evidence and properly gave less weight to the opinion of Dr. Hay, the ALJ's RFC was not erroneous. The RFC therefore did not improperly fail to include some of Plaintiff's limitations.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 24th day of June, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge